UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLES LANCE HAYES JR.,                  CIVIL ACTION
ET AL.

VERSUS

FRONTERA PRODUCE, LTD,            NO.: 3:12-cv-00588-BAJ-RLB
ET AL.

### AMENDED RULING AND ORDER

Before the Court is a motion to dismiss, filed by Defendant Primus Group, Inc. ("Primus") (Doc. 32), seeking an order from this Court dismissing Plaintiffs' Complaint (Doc. 1), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] Plaintiffs oppose this motion. (Doc. 37). Primus has filed a reply in response to Plaintiffs' memorandum in opposition. (Doc. 49). Plaintiffs have filed a sur-reply in support of their memorandum opposing the motion. (Doc. 50). Oral argument is not necessary.

### I. BACKGROUND

Plaintiffs filed their original complaint in September 2012 alleging a Louisiana state law wrongful death claim based on negligence. (Doc. 1 at ¶¶ 53-57). Accepting as true all of the "well pleaded facts," *see Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted), Plaintiffs' complaint makes out the following: in July 2011 Jensen Farms—a Colorado based producer and seller of Rocky Ford brand cantaloupe—and/or Frontera Produce Ltd. ("Frontera")—a

---

[1] "Plaintiffs" are Charles Lance Hayes, Jr. and Jude Thaddeus Hayes, individually, and on behalf of the Estate of Elaine Filment Hayes Babcock, deceased.

manufacturer, distributor and seller of agricultural products—contracted with Primus to conduct an audit of Jensen Farms's ranchlands and packing house. (*Id.* at ¶ 12). Primus then subcontracted with Bio Food Safety to complete the Jensen Farms audit. (*Id.* at ¶ 16). Bio Food Safety, as Primus's agent, conducted the Jensen Farms audit on or about July 25, 2011. (*Id.* at ¶ 19). Bio Food Safety's audit "gave the Jensen Farms' packing house a 'superior' rating, and a score of 96%." (*Id.*).

Plaintiffs allege that the purpose of this audit was to ensure that Jensen Farms used sound agricultural practices, met industry standards, and complied with U.S. Food and Drug Administration ("FDA") regulations. (*Id.* at ¶ 13). For its part, Primus argues that there is no factual basis or support for Plaintiffs' claims regarding the purpose of the audit, and further, there is no factual basis to determine the audit's actual purpose.[2] (Doc. 32-1 at 3).

After Primus's audit, Jensen Farms allegedly sold cantaloupe contaminated with *Listeria monocytogenes*, a dangerous pathogen, to Frontera. (Doc. 1 at ¶ 8). Frontera then distributed the tainted cantaloupe to other parties. (*Id.*). The tainted cantaloupes were distributed from July 29, 2011 through September 14, 2011, when Jensen Farms issued a recall notice for its Rocky Ford brand products. (*Id.* at ¶ 11).

On September 2, 2011, the Colorado Department of Public Health and Environment ("CDPHE") investigated an outbreak of *Listeria* that was affecting various locations in Colorado. (*Id.*). CDPHE's investigation revealed that cantaloupe

---

[2] Among other things, Plaintiffs have failed to reference a contract or any regulatory requirement imposing a duty upon Jensen Farms to undergo an audit. Plaintiffs also offer no factual basis indicating what underlying purpose the audit was to accomplish. This issue bears directly on whether Primus owed a duty to Plaintiffs.

2

grown by Jensen Farms in Colorado was the source. (*Id.*). The FDA joined the investigation, visited Jensen Farms on September 19, 2011, and found *Listeria* on Jensen Farms's equipment and cantaloupe. (*Id.* at ¶ 10). The FDA issued a report of findings dated October 19, 2011. (*Id.* at ¶23). This report concluded that Jensen Farms's facilities had significant public health related design flaws which contradicted Primus's audit findings. (*Id.* at ¶ 23).

Plaintiffs allege that Frontera distributed adulterated cantaloupes in Louisiana during the period of July through September 2011. (*Id.* at ¶ 35). In August 2011, Ms. Elaine Filment Hayes Babcock, a resident of Baton Rouge, Louisiana, purchased and consumed a Rocky Ford brand cantaloupe which tested positive for *Listeria*. (*Id.* at ¶ 32). On September 25, 2011, Ms. Babcock's son Lance found her unresponsive on the floor of her home, and took her to the hospital. (*Id.* at ¶ 33). Ms. Babcock's blood tested positive for *Listeria* strains related to the *Listeria* outbreak caused by Jensen Farms's cantaloupe. (*Id.*). Ms. Babcock did not recover, and passed away on October 1, 2011. (*Id.* ¶ 34).

Plaintiffs sued Frontera and Primus on September 21, 2012. (Id. at ¶¶ 3-4, 62). As to Primus, Plaintiffs allege that Primus owed a duty of reasonable care to those people that would be the ultimate consumers of Jensen Farms's products. (*Id.* at ¶ 54). Specifically, Plaintiffs allege that Primus's agency relationship with Bio Food Safety binds Primus for acts of negligence committed by Bio Food Safety and its personnel. (*Id.* at ¶¶ 53-55). In relation to performance of the audit contract, Plaintiffs' claim that Bio Food Safety's audit was not conducted with reasonable

3

care. (*Id.*). Plaintiffs further argue that Bio Food Safety negligently hired, trained, and supervised the auditor that completed the audit of Jensen Farms, and that Primus was negligent in selecting and monitoring its agent, Bio Food Safety. (*Id.* at ¶ 56). Ultimately, Plaintiffs contend that had Primus completed its audit with reasonable care and assigned a failing score to Jensen Farms's packing house, production and distribution of Jensen Farms's products would have ceased, and Ms. Babcock would still be alive. (*Id.* at ¶ 30).

Primus now seeks an order from this Court dismissing Plaintiffs' claims, pursuant to Rule 12(b)(6). (Doc. 32 at 1). Primus contends that the Plaintiffs' assertions are speculative, because there are no facts suggesting a failing score would have stopped Jensen Farms's production. (Doc. 32-1 at 5). Primus also argues that Plaintiffs' complaint must be dismissed because no facts are alleged that would support the existence of a legal duty owed by Primus to the Plaintiffs. (*Id.* at 7).

Finally, Primus argues that the Plaintiffs offer no factual support that Ms. Babcock was a member of the limited group for whose benefit its audit report was prepared, so no duty was owed to her. (*Id.* at 8-11).

Plaintiffs have filed memorandum in opposition to Primus's motion to dismiss. (Docs. 37 and 50). Primus has filed a reply memorandum. (Doc. 49).

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

Further, the Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

## III. ANALYSIS

### A. Plaintiffs' Negligence Claim Against Primus

#### 1. Plaintiffs have Failed to Establish that Primus Owed a Duty Because Contractual Privity and/or a Fiduciary Relationship are Lacking

The legislative sources of general negligence in Louisiana are set forth in La. Civ. Code Ann. arts. 2315 and 2316. Article 2315 provides, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 reads, "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

In *Pitre v. Opelousas General Hosp.*, the Louisiana Supreme Court provided an analytical framework for establishing a prima facie case of negligence under Louisiana law. 530 So. 2d 1151 (La. 1988). *Pitre* listed four questions which require affirmative answers to find negligence. *Id.* at 1155. The first question, which is squarely at issue in the instant case, is "given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be fault?" *Id.*; *see also McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 627 (5th Cir. 2007) ("Under Louisiana law, the existence of a duty, and the corollary issue whether the duty extends to protect a particular plaintiff from a particular harm, are questions of law usually determined together, case-by-case.")

The question of whether a third-party auditor of agricultural production facilities owes a duty of reasonable conduct to end consumers is an issue of first impression in Louisiana.

> When faced with unsettled questions of Louisiana law, we adhere to Louisiana's Civilian decision-making process by first examining primary sources of law, namely, Louisiana's Constitution, codes, and statutes. This is because the primary basis of Louisiana's Civil Law is legislation and not the prior decisions of its courts. In the absence of a definitive resolution in the State's primary sources, however, we look next to the final decisions of the Louisiana Supreme Court. Only in the absence of such a final decision must we make an "*Erie* guess" as to how that court would resolve the issue if presented with the same case. Although we do not disregard the decisions of Louisiana's intermediate courts unless we are convinced the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*See Wiltz v. Bayer CropScience Ltd. P'ship*, 645 F.3d 690, 695 (5th Cir. 2011) (citations omitted).

Thus, in determining whether Primus owed a duty to Plaintiffs, the court begins with "Louisiana's Constitution, codes, and statutes." *Id*. The Plaintiffs cite La. Civ. Code arts. 2315 and 2316, and related jurisprudence as their legal source for duty. (Doc. 37 at 10-11).

Primus responds that the decedent, Ms. Babcock, was not a member of the limited group for whose benefit its audit report was prepared, so no duty was owed. (Doc. 32-1 at 8). This is so, Primus contends, because no factual allegations exist that would establish the decedent was within a group of intended users of the report, nor was the decedent an intended third-party beneficiary of the audit report. (*Id.* at 11).

The Court begins by noting the fact that Primus supplied its report to Jensen Farms *alone*. (Doc. 1 at ¶ 19). Jensen Farms sold its cantaloupes to a wholesaler, which then sold them to various Louisiana retailers, which ultimately sold the tainted cantaloupe to the decedent. (*Id.* at ¶ 31). The chain of distribution utilized multiple parties, none of which but Jensen Farms are alleged to have been provided copies of the audit report. This does not imply that a duty *cannot* exist when products tend to enter the stream of commerce subject to a long supply chain; it does, however, show that facts tying the results of the audit report to the decedent are extremely attenuated.

The few Louisiana cases which contemplate a duty being owed to third-parties to a contract generally entail the third-party being in some direct way a party to a common transaction. For example, in *Barrie v. V.P. Exterminators*, the Louisiana Supreme Court found that a termite inspector owed a duty to purchasers of a home, despite the fact that the inspector was hired by the seller of the home and lacked contractual privity with the purchasers. *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007 (1993). The court reached this conclusion by showing that even though the seller and inspector were the parties in privity, the inspector's report was intended to facilitate sale to potential buyers of the home, such that those buyers were foreseeable users of the report. *Id.* at 1016.

In another case, a pipe supply contractor provided specifications for pipes subject to a mineral flow operating agreement. The pipes later failed, resulting in damage to a landowner's land. *Gulf Production Co., Inc. v. Hoover Oilfield Supply,*

8

*Inc.*, 672 F. Supp. 2d 752 (E.D. La. 2009). The landowner was a party to the mineral operations tied to his land, but was not in contractual privity with the pipe supplier. The court found that the landowner was an intended and reasonably foreseeable user of the information provided by the pipe supplier such that a duty of reasonable care might be found. *Id.* at 759.

In both *Barrie* and *Gulf*, the injured party lacked a contractual relationship with the defendants, but in both cases the plaintiffs were still actually a party to a common underlying transaction. The Plaintiffs in the instant case are devoid of any relationship at all with Primus. No evidence is offered to support a finding that Primus intended its work product to impact anyone beyond Jensen Farms. This undermines Plaintiffs' claim that Primus owed them a duty, because no factual basis exists to show that the audit report or its findings were intended to be provided to, or for the benefit of, a class of "end consumers" — including the decedent.

> **2. Plaintiffs have Failed to Establish any Reliance by the Decedent on Primus's Audit Report, or that Primus Could Control the Implementation of its Audit Recommendations which would Support Finding a Duty**

The Plaintiffs cite *Daye v. General Motors Corp.* for the proposition that "in the personal injury context in Louisiana, an actor has a duty to avoid negligently giving false information that results in physical injury to a third person." (Doc. 37 at 12-13). *See Daye v. General Motors Corp.*, 97-1653, (La. 9/9/98); 720 So. 2d 654. *Daye*, however, is easily distinguishable.

9

In *Daye*, General Motors provided advertisements and operating materials directly to consumers touting the Corvette's superior braking system. *Id.* at 656. As a member of a class of "consumers," the injured party in *Daye* could at least assert some reliance on General Motors' reports. This is because General Motors included the Corvette's braking instructions in each car's operating manual. *Id.* These manuals were included in each Corvette, and Daye acknowledged owning, but not reading the manual. *Id.* The Corvette's brakes were also featured prominently in television and print advertisements. *Id.* No facts are alleged in the instant case that the decedent had any knowledge of Primus's audit report or relied thereon. The decedent was not given a copy of the audit findings or audit contract, and Primus did not advertise its services to the consumer market.

Plaintiffs note that the wholesaler, Frontera, which distributed the tainted cantaloupe, required all of its suppliers to be "Primus Certified." (Doc. 37 at 9). While this may indicate some level of quality of product, the pleadings indicate that only Frontera used this designation. *Id.* The pleadings do not allege that Primus provided this certification to its contractual partner, Jensen Farms. *Id.* No facts are alleged that Primus controlled use of the term "Primus Certified," or that any consumer relied on those words.

Furthermore, Primus supplied a detailed audit report to Jensen Farms. (Doc. 1 at ¶ 17). Presumably the facts in that report contain precise findings about production methods, manufacturing standards, etc. The degree of specificity in a professional audit report would seemingly entail a complex body of information. A

simple slogan like, "Primus Certified," would not accurately convey the purpose of the audit report.[3]

This Court is not persuaded that Primus' audit report was geared towards guaranteeing consumer health, or that Primus intended to step into a role beyond process and production level auditing of food suppliers. While those areas of expertise relate to consumer food safety, Primus is not involved on a retail level in this case. All of Primus' dealings appear to have been at the production level, and holding Primus to task for a *conceivable* pathogen that *could* harm a consumer stretches too far the concept of foreseeability.

Ultimately, the Court determines that Primus' work product is not integral to any of Jensen Farms' end products as was the case in *Barrie* and *Gulf*. As noted, Primus's audit findings were related to Jensen Farms's processes, and even then only to the extent that Jensen Farms incorporated the audit's suggestions. Primus's audit report related to food safety, but is not alleged to opine on the absence of pathogens on individual pieces of fruit. Imputing liability to a third party that did not provide its report or services, either directly or indirectly, to a class of persons that would use those products, stretches the notion of duty beyond the jurisprudential standards.[4] *See, e.g.*, *Gulf*, 672 F. Supp. 2d at 757 (noting duty

---

[3] As noted, the actual audit contract is not available. However, the FDA report referenced by Plaintiffs is quite detailed. (Doc. 1 ¶ 23). The two word slogan "Primus Certified," is too generic to convey much meaning.

[4] The Court is aware that its honorable colleague in the Western District of Louisiana recently reached the opposite conclusion on facts virtually indistinguishable from those at issue here—specifically that "Primus may have owed a duty to [the decedent]." *Gilbert v. Frontera Produce, LTD, et al.*, No. 12-2754, slip op. at p. 11, 2014 WL 801451 (W.D. La. Feb. 28, 2014) (order denying Primus's motion to dismiss). In *Gilbert*, the Court stated that "whether an agricultural auditing

absent privity of contract may extend when the person harmed is part of an anticipated class of users); *Barrie*, 625 So. 2d at 1015 ("[M]ore pertinently, in cases where privity of contract is absent but there is communication of the misinformation by the tortfeasor directly to the user or the user's agent, they have also found the user is owed a tort duty.")

In sum, Plaintiffs' assertion is merely a legal conclusion stated as fact. Legal conclusions are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that *Primus's* **MOTION TO DISMISS (Doc. 32)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **STRIKE FROM THE RECORD** the original Order granting Primus's Motion to Dismiss (Doc. 60).

Baton Rouge, Louisiana, this 24th day of March, 2014.

*[signature]*

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

company that inspects and audits a food production facility owes any duty to third persons who ultimately consume the food products" is a "troublesome" issue of first impression in Louisiana, particularly because recognizing a duty in these circumstances "expose[s] Primus to potentially exponential liability." *Id.* at pp. 11, 16–17. Nonetheless, the Western District determined that plaintiffs pleaded "sufficient facts to establish that a duty *may* have been owed," and therefore denied Primus's motion to dismiss. *Id.* at p. 17 (emphasis added). Given the difference in opinion between this Court and the Western District, guidance from the Fifth Circuit is certainly welcomed.